IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ROBERT G. DEMPSEY,

     Petitioner,

v.                                                                    No. 1:14-cv-01349-JDB-egb
                                                                      No. 1:13-cr-10047-JDB-1

UNITED STATES OF AMERICA,

     Respondent.

---

ORDER DENYING § 2255 MOTION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Petitioner, Robert G. Dempsey, a federal prisoner, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Petition"). (Case Number ("No.") 14-cv-01349, Docket Entry ("D.E.") 1.)[1] For the following reasons, the Petition is DENIED.

## BACKGROUND

On September 4, 2013, pursuant to an agreement with the government, Dempsey pleaded guilty to one count of knowingly transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) ("Count 1"), and one count of knowingly possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) ("Count 2"). (No. 13-cr-10047, D.E. 22; *id.*, D.E. 21 at PageID 36-37; *id.*, D.E. 20.) Assistant Federal Public Defender Randolph Alden was appointed to represent Defendant. (*Id.*, D.E. 9.)

By the terms of the plea agreement, the government agreed to recommend that Defendant be sentenced in the middle of the advisory guidelines sentencing range, and further agreed not to

---

[1] Hereinafter, record citations to Petitioner's civil case, 14-cv-01349, will not contain the case number, while citations to documents filed in his criminal case, 13-cr-10047, will include the case number.

oppose his receiving acceptance of responsibility credit.   (*Id.*, D.E. 21 at PageID 37.)

Petitioner waived his right to appeal his sentence under 18 U.S.C. § 3742 and his right to

collaterally attack his sentence under 28 U.S.C. § 2255.   (*Id.*, D.E. 21 at PageID 38.)   He did

not, however, consent to waive his right to challenge his conviction and sentence on the ground

that his plea/waiver was obtained through the ineffective assistance of counsel or prosecutorial

misconduct, or was otherwise involuntary.   (*Id.*, D.E. 21 at PageID 38.)

The United States Probation Office prepared a Presentence Report ("PSR"), which set

forth the offense conduct.   According to the PSR, "the two main victims . . . made a complaint

to [the] South Ogden[,] [Utah,] Police regarding sexual abuse committed against them by Robert

Dempsey" since they were children.   (PSR at 5.)   The victims (hereinafter, "Child 1" and

"Child 2") had been friends when they were children.

The abuse began when Child 2 was seven years old, and occurred during hikes and in the

basement of Dempsey's residence.   Defendant "often spoke to" the victims "about drug use"

and "masturbation, oral sex, condom use, foreplay, pornography, and other sexually explicit

topics."   (*Id.* at 5, 6.)   He also played "Truth or Dare" with them.   "[O]ne of the dares was for

[Child 1] to sit in [Defendant's] lap and pretend to 'French kiss' him."   (*Id.* at 5.)   Child 2

recalled that Child 1 "straddled [Defendant], facing him with her arms around his neck."   (*Id.*)

Both Child 1 and Dempsey were nude, and Child 2 "took pictures of the 'dare.'"   (*Id.*)

Child 2 told the police that Defendant "would take pictures of her and [Child 1],"

"[s]ometimes . . . in provocative poses, and the poses were part of the dares."   (*Id.*)   Dempsey

"would then instruct them not to tell anyone about the game because no one would understand."

(*Id.* at 6.)   Child 2 recalled a time when she, Child 1, and Defendant took a shower together, and

another time when he "covered his naked body in baby oil and lay down [o]n the floor," while having the victims "slide all over his body while they were also naked." (*Id.*)

During hikes, Dempsey would "find secluded places" and the victims "would play naked together while [Defendant] would photograph them." (*Id.*) Child 2 told the police "that all of the physical touching occurred before she was twelve years of age." (*Id.*) Dempsey told Child 2 that she should "not . . . tell anyone and then stated to her that it was [Child 1's] idea anyway." (*Id.*) She told authorities "that years after the abuse, [Defendant] showed her the photos of them naked and discussed their 'artistic and photographic merit.'" (*Id.*)

Child 2 reported that "she had touched [Defendant's] genitals but probably less than five times," that "he had not touched her genitals but . . . did touch her breasts on occasion, sometimes as part of the Truth or Dare games." (*Id.*) She "advised that [Child 1] witnessed and participated in the touching." (*Id.*)

In January 2013, Child 2 "placed a recorded phone call to [Dempsey] in an effort to get him to admit to the allegations of child abuse." (*Id.*) He told Child 2 "that he fell in love with Child 1 the first time he met her, which was on a field trip when [Child 2] and [Child 1] were in the first grade." (*Id.*) He admitted to having taken nude photos of them during the Truth or Dare games and while on hikes. Defendant also admitted to taking "photos of [Child 1] while [Child 2] was at dance rehearsal" and having kissed Child 1 "on a few occasions." (*Id.* at 6-7.) He remembered "that [Child 1] sat in his lap while both were nude." (*Id.* at 7.) He stated that he still possessed "the photos of [Child 1] and cherished them." (*Id.* at 6.)

Child 1 gave a statement to authorities in which she confirmed Child 2's version of the events. She further recounted additional details of Dempsey's abuse. (*Id.* at 7.)

An investigator from the South Ogden Police Department shared the information with the Federal Bureau of Investigation, which contacted Investigator Hilburn of the Tennessee Internet Crimes Against Children Taskforce. (*Id.* at 5.) At the time, Dempsey "was a formal residen[t] of Ogden, Utah[,] but was residing in Perry County, Tennessee." (*Id.*) A search warrant of Dempsey's apartment was executed in April 2013. "[N]umerous photographs of the two victims" were found, most of which were of Child 1 and which constituted child erotica and child abuse "due to their sexually explicit nature." (*Id.* at 8.) The investigators also "confiscated numerous printed photos, cameras, computers, film negatives, several articles of young girls' clothing, drug paraphernalia, and other items," including "CDs and DVDs" containing "commercially produced child abuse images that had been downloaded from the Internet [and] then copied to the discs." (*Id.*) "Additional images of prepubescent females" which had been "taken with a Nikon digital camera of the same make and model as one of the cameras found in [Defendant's] residence" were also discovered. (*Id.*) Investigators confiscated a notebook in which Dempsey had "described his feelings towards" Child 1, starting "on the day they met during a first grade fieldtrip." (*Id.*)

In addition to setting forth the details of the offense conduct, the PSR calculated the advisory sentencing range under the U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2012) ("Guidelines" or "U.S.S.G.").[2] (PSR at 9-16.) The PSR assigned a base offense level of 32, arrived at by applying the cross-reference of U.S.S.G. § 2G2.2(c)(1). (*Id.* at 10.) The adjusted offense level was 40, due to an eight-level increase for specific offense characteristics: four levels because the offense involved a minor who had not attained the age of

---

[2] Except where noted, all references to the Guidelines are to the 2012 Guidelines. *See* U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2012).

twelve years; two levels because the offense involved the commission of a sexual act or sexual contact; and two levels because the minor was in the custody, care, and supervisory control of Defendant. (*Id.*)

A total offense level of 37 was arrived at after a three-point reduction for acceptance of responsibility. (*Id.*) Dempsey's criminal background included only a single conviction for felony attempted sexual abuse of a minor, which was reduced to a misdemeanor after his successful completion of probation. (*Id.* at 11.) He was placed in criminal history category I, (*id.* at 12), resulting in an advisory Guideline imprisonment range of 210 to 262 months, (*id.* at 15). The statutory range on Count 1 was 60 months (five years) minimum and 240 months (20 years) maximum. (*Id.* at 15.) The statutory maximum on Count 2 was 120 months (ten years). (*Id.*)

Defense counsel filed a position statement regarding the PSR in which he raised a statute of limitations issue, argued that the use of the cross-reference under § 2G2.2(c)(1) of the 2012 Guidelines was a violation of the Ex Post Facto Clause, and objected to the recommended supervised release conditions. (No. 13-cr-10047, D.E. 23 at PageID 42-49.)

At a hearing on December 3, 2013, the Court sentenced Defendant to 170 months in prison, which was below the low end of the advisory range of 210 to 262 months. (*Id.*, D.E. 25.) A ten-year period of supervised release was imposed. (*Id.*) Judgment was entered on December 4, 2013. (*Id.*, D.E. 27; *id.*, D.E. 26.)

Dempsey signed and placed his Petition into the prison mail system on December 17, 2014, (D.E. 1 at PageID 19), and subsequently filed a memorandum in support (D.E. 6). He asserts the following claims:

**Claim 1:** Counsel was ineffective by failing to object to the application of U.S.S.G. § 2G2.1(b)(2)(A) "for commission of a 'sex act or sexual contact.'" (D.E. 1 at PageID 5.)

**Claim 2**: Counsel was ineffective by failing to argue double jeopardy. (*Id.* at PageID 6.)

**Claim 3:** Counsel was ineffective by failing to cite to case law in his oral presentation of the ex post facto objection. (D.E. 6 at PageID 46; D.E. 1 at PageID 7.)

**Claim 4:** Counsel was ineffective by failing to argue that the child pornography provisions of the Guidelines "are seriously flawed and should not have been followed." (D.E. 1 at PageID 8.)

**Claim 5**: Counsel was ineffective by not challenging the government's failure to prove the element of intent for the relevant conduct of "production." (D.E. 11 at PageID 112; D.E. 6 at PageID 56; D.E. 1 at PageID 9.)

**Claim 6**: Counsel was ineffective by failing to seek a reduction in the offense level due to Petitioner having played a minor or minimal role in the offenses of conviction. (D.E. 1 at PageID 10.)

**Claim 7**: Counsel was ineffective by failing to "adequately" argue the need to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar crimes." (*Id.* at PageID 12.)

**Claim 8**: Counsel was ineffective by failing to call as a witness at sentencing a certain psychologist. (*Id.* at PageID 13.)

**Claim 9**: Counsel was ineffective by failing to attend the meeting with the U.S. Probation officer, to file written objections to factual errors in the PSR, and to object to Child 2's victim impact statement. (D.E. 6 at PageID 73; D.E. 1 at PageID 14.)

**Claim 10**: Counsel was ineffective by incorrectly advising him about the rights he was waiving by his plea. (D.E. 1 at PageID 16.)

On March 31, 2017, the government responded to the Petition. (D.E. 10.) The inmate subsequently filed a reply. (D.E. 11.)

**DISCUSSION**

Respondent argues that the Petition should be denied because Dempsey waived his right to bring a § 2255 action. (D.E. 10 at PageID 89-92.) In the alternative, the government contends that the claims are without merit. (*Id.* at PageID 92-100.) Petitioner asserts that his waiver is invalid and his claims are meritorious. (D.E. 11 at PageID 107-120; D.E. 6 at PageID 34-75.)

### 1. Legal Standards

Petitioner seeks resentencing pursuant to 28 U.S.C. § 2255(a). The statute reads as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Accordingly, a prisoner seeking to vacate his sentence under § 2255 "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). The petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim of attorney ineffective assistance is of constitutional magnitude. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To prevail on such a claim, a petitioner must demonstrate that (1) his attorney's performance was deficient, that is, "fell below an objective standard of reasonableness," and (2) his attorney's error prejudiced him. *Id.* at 687-88. The attorney's

performance is presumptively reasonable, and the petitioner bears the burden of overcoming the presumption. *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Where ineffective assistance at sentencing is asserted, prejudice is established if the [petitioner] demonstrates that his sentence was increased by the deficient performance of his attorney." *Johnson v. United States*, No. 15-2032, 2017 WL 3895063, at *1 (6th Cir. Mar. 16, 2017) (unpublished) (quoting *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007)).[3]

## 2. Waiver

Respondent argues that the Court need not reach the merits of Petitioner's claims because he waived his right to bring them. (D.E. 10 at PageID 89-92.) Dempsey asserts that the Court must reach the merits of his claims because his waiver was not knowing and voluntary due to the ineffective assistance of counsel. (D.E. 11 at PageID 107-08; D.E. 6 at PageID 34-35.)

In his plea agreement, Defendant stipulated that he was waiving certain rights:

> (10)   I understand that Title 18, United States Code, Section 3742 gives me the right to appeal the sentence imposed by the Court.   Acknowledging this, I knowingly and voluntarily waive my right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as my sentence is within the statutory maximum specified above.   This waiver is made in exchange for the concessions made by the United States in this Plea Agreement.   The waiver in this paragraph does not apply to claims relating directly to this waiver of appellate rights or to its negotiation that also involve the involuntariness of my plea, prosecutorial misconduct, or ineffective assistance of counsel.

> (11)   I understand that Title 28, United States Code, Section 2255 provides an additional method by which to challenge the sentence imposed by the Court. Acknowledging this, I knowingly and voluntarily waive my rights to file an action pursuant to Section 2255.

---

[3] A § 2255 petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b).   An evidentiary hearing on Petitioner's claims is unnecessary, as they fail as a matter of law, are unsupported, or are belied by the record in his criminal case.

(No. 13-cr-10047, D.E. 21 at PageID 38 (emphasis in original).)   In the agreement's last paragraph, Defendant acknowledged that he had read and discussed the terms with his attorney, and that he was satisfied with counsel's advice.   (*Id.*, D.E. 21 at PageID 39.)

At the start of the change of plea hearing, the Court twice advised Dempsey that he should let the Court or his attorney know if there was anything he did not understand, and Defendant stated that he would do so.   (*Id.*, D.E. 36 at PageID 193-95.)   Upon questioning, the inmate confirmed, under oath, that he had signed the plea agreement, and he answered "Yes" when asked "Did you enter that agreement following your review of it with your attorney, did you enter that freely and voluntarily, sir?"   (*Id.*, D.E. 36 at PageID 207-08.)   He acknowledged that he was satisfied with the advice and representation of his attorney.   (*Id.*, D.E. 36 at PageID 195.)

The prosecutor summarized the plea agreement, including the waiver provisions.   (*Id.*, D.E. 36 at PageID 208-13.)   The Court asked Dempsey if he understood and agreed to the terms of the plea agreement, including the waiver of his right to appeal and to bring an action under § 2255, and he stated that he did.   (*Id.*, D.E. 36 at PageID 196, 215-16.)   He asked the Court, however, about one aspect of the waiver, stating that he believed "there was an exception" to waiver "in case that I had not been adequately represented."   (*Id.*, D.E. 36 at PageID 216.)   The Court and defense counsel clarified for Defendant that his waiver contained an exception for a challenge to the plea (including the waiver provision) on the ground that it was obtained through the ineffective assistance of counsel or prosecutorial misconduct, or was otherwise involuntary. (*Id.*, D.E. 36 at PageID 216.)   Defendant confirmed that he understood.   (*Id.*, D.E. 36 at PageID 217.)   The Court ultimately found that Dempsey had "freely and voluntarily" pleaded guilty. (*Id.*, D.E. 36 at PageID 221.)

In seeking merits review of his claims, Petitioner asserts that his waiver was not voluntary due to the ineffective assistance of counsel. (D.E. 11 at PageID 107-08; D.E. 6 at PageID 35; D.E. 1 at PageID 16.) He alleges that he "specifically asked counsel regarding [the waiver] paragraphs" of the plea agreement, and counsel "advised [him] that he could raise a claim of ineffective assistance of counsel." (D.E. 6 at PageID 35.) He states that counsel did not, however, "explain . . . that such a claim must be brought before the Court by way of [a] section 2255" petition, which Petitioner was waving his right to bring. (*Id.*)

A defendant's waiver of his right to collaterally attack his conviction and sentence pursuant to § 2255 is enforceable if entered into "knowingly, intelligently, and voluntarily." *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). A defendant may thus challenge the voluntariness of his plea and waiver in a § 2255 proceeding. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (holding a waiver of § 2255 rights cannot foreclose evaluation of an argument that the guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel).

Petitioner, here, fails to show that the waiver of his right to bring § 2255 claims was involuntary due to attorney ineffectiveness. Even assuming that counsel performed deficiently—that is, did not advise Petitioner that he was waiving his right to bring all ineffective assistance claims except a claim related to the voluntariness of the plea or waiver—he cannot show that he was prejudiced. Any misunderstanding was cured by the Court and defense counsel in open court when they clarified for him the narrow nature of the ineffective assistance claim not covered by the waiver, and he stated that he understood. *See Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (A

"proper plea colloquy cure[s] any misunderstanding [a defendant] may have had about the consequences of his plea.").

Accordingly, based on the record in Defendant's underlying criminal case, the Court finds that his waiver of a right to bring a § 2255 action is not invalid as a result of attorney ineffectiveness. *See, e.g.*, *Craig v. United States*, Nos. 2:08-cv-56, 2:04-cr-78, 2011 WL 864359, at *6 (E.D. Tenn. Mar. 10, 2011) (holding that "the transcript of the change of plea hearing confirms the knowing and voluntary nature of the waiver"), *aff'd*, 513 F. App'x 487 (6th Cir. 2013).

The Court has nevertheless reviewed the merits of Petitioner's claims and concludes, for the reasons that follow, that he is not entitled to relief.

### 3. Claim 1: Guideline Calculation

Dempsey asserts that counsel was ineffective by failing to challenge the application of a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A) "for commission of a 'sex act or sexual contact.'" (D.E. 6 at PageID 36; D.E. 1 at PageID 5.) He claims that "[t]here is nothing in the photographs of [Child 1], nor was there anything contained within the . . . PSR . . . that establishes a 'sex act or sexual contact.'" (D.E. 6 at PageID 36.)

Section 2G2.1(b)(2)(A) of the Guidelines provides that "[i]f the offense involved . . . the commission of a sexual act or sexual contact, increase [the base offense level] by 2 levels." U.S.S.G. § 2G2.1(b)(2)(A). The definitions of "sexual act" and "sexual contact" are defined in 18 U.S.C. §§ 2246(2) and (3), respectively. *See* U.S.S.G. § 2G2.1 cmt. n.2. "Sexual act" is defined, in relevant part, as "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade,

or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). Section 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Petitioner's assertion that none of the photos involved a sexual act or sexual contact is belied by the record. As Respondent notes, Defendant "possessed an image that was described by the government during his change-of-plea hearing" showing sexual contact between him and a minor female. (D.E. 10 at PageID 93.) In that image, the minor "is completely nude and seated on Dempsey's lap" "fac[ing] him." (No. 13-cr-10047, D.E. 36 at PageID 219-20.) Dempsey "is also fully nude," "and [the child] is kissing him on the mouth." (*Id.*, D.E. 36 at PageID 220.) When asked by the Court whether the information provided by the government was "basically correct," Defendant answered "Yes, sir." (*Id.*) As described, the photo shows, at minimum, the inmate touching the minor's unclothed buttocks with his legs with an intent "to arouse or gratify . . . sexual desire." *Cf. United States v. Mays*, No. 8:06-cr-514-T-23MSS, 2007 WL 1839480, at *3 (M.D. Fla. June 26, 2007) (holding that defendant's touching of child's breast and inner thigh with his forearm and elbow, but not his hand, constituted "touching" for purposes of "sexual contact" under 18 U.S.C. § 2246(3)).

Even if counsel could somehow have constructed a colorable argument that the photo did not depict sexual contact, Petitioner has not shown deficient performance. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)

(citing *Strickland*, 466 U.S. at 690). Dempsey has not explained how his attorney's decision to forego an argument that no photos depicted sexual contact, while proceeding with other arguments, was not sound strategy.

Claim 1 is DENIED.

### 4. Claim 2: Double Jeopardy

Petitioner insists that counsel was ineffective by failing to present a double jeopardy argument. (D.E. 1 at PageID 6.) He posits that "[t]here is a double jeopardy violation in [his] convictions for both transporting and possessing the same child pornography." (D.E. 6 at PageID 41.)

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The prohibition . . . protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense." *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006) (citing *Witte v. United States*, 515 U.S. 389, 391 (1995)).

Even assuming that a defendant's possession of child pornography might sometimes be a lesser included offense of transportation of those same images, counsel did not perform deficiently by failing to make a double jeopardy argument in Petitioner's case. The Sixth Circuit has made clear that, "conviction under [two] statutes is permissible if separate conduct is found to underlie the two offenses." *United States v. Hutchinson*, 448 F. App'x 599, 603 (6th Cir. 2012) (quoting *United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011)). Dempsey was convicted of transporting child pornography in and around 2009 and 2010, while his possession conviction related to conduct "on or about April 3, 2013." (No. 13-cr-10047, D.E. 1 at PageID 1-2.) He

could have disposed of the photos long before 2013, but he did not do so. His possession conviction thus involves conduct that is distinct from the actions underlying his transportation conviction. A double jeopardy argument by counsel would therefore have been futile, and "the failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).

Claim 2 is DENIED.

### 5. Claim 3: Ex Post Facto

In Claim 3, Petitioner maintains that counsel was ineffective by failing to adequately argue that the Ex Post Facto Clause of the Constitution, U.S. Const. art. 1, § 9, cl. 3, required the Court to use the Guidelines in effect in 2001, rather than the 2012 Guidelines, which were in effect at the time of his sentencing. (D.E. 1 at PageID 7.)

As noted, the PSR assigned a higher base offense level through the cross-reference contained in U.S.S.G. § 2G2.2(c)(1), as found in the 2012 Guidelines. *See* U.S.S.G. § 2G2.2(c)(1). Section 2G2.2(c)(1) states that, "[i]f the offense involved causing, transporting, permitting, or offering . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," apply § 2G2.1. U.S.S.G. § 2G2.2(c)(1). Section 2G2.1 provides for a base offense level of 32. U.S.S.G. § 2G2.1. "The cross-reference merely implements the common sense notion that a receiver or possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than one who has received or possessed the pornography and no more." *United States v. Dawn*, 129 F.3d 878, 884 (7th Cir. 1997). The Guidelines in effect in 2001, the last year Dempsey produced the

pornography,[4] assigned a base level of 27 under the cross-reference.   *See* U.S.S.G. § 2G2.2(c)(1) and § 2G2.1 (U.S. Sentencing Comm'n 2001).

Dempsey's attorney submitted a written position statement arguing, among other things, that "application of the 2012 Guidelines" violates the Ex Post Facto Clause because those Guidelines "call for a greater punishment than attached . . . in 2001."   (No. 13-cr-10047, D.E. 23 at PageID 44-45.)   Counsel cited case law to support the logic of his argument.   (*Id.*, D.E. 23 at PageID 44.)   At sentencing, he presented his ex post facto argument orally.   (*Id.*, D.E. 33 at PageID 103-09.)   The Court rejected the argument, (*id.* at PageID 128), applied the enhancement, and imposed a sentence below the advisory range, but within the minimum and maximum statutory range.

The inmate now complains that counsel did not do enough to present the argument.   He concedes that "[i]n his written response to the PSR, counsel argued the issue correctly," but claims "his error occurred at sentencing," when he answered "no" to the Court's question of whether there were any cases on point.   (D.E. 6 at PageID 46.)   Specifically, "Petitioner contends that counsel was ineffective for failing to cite . . . at sentencing" the case law he cited in his position statement.   (*Id.* at PageID 47.)

Counsel's performance was not deficient.   To the contrary, the attorney presented a clear and vigorous ex post facto argument, and he truthfully told the Court that there was no controlling case law.

Petitioner was also not prejudiced.   The Court read counsel's position statement and heard his oral argument.   Having thoroughly considered the issue, the Court determined that there was

---

[4] According to the Addendum to the PSR prepared by the United States Probation Office, Dempsey produced the pornography between 1998 and 2001.

no ex post facto violation.[5]    The sentence imposed would not have been shorter had counsel done more.

Claim 3 is therefore DENIED.

## 6. Claim 4: "Seriously Flawed" Child Pornography Guidelines

In Claim 4, Petitioner asserts "that trial counsel was ineffective in failing to argue prior to and at sentencing that the sentencing guideline[s] . . . under which he was sentenced [were] seriously flawed" and should have been disregarded.    (D.E. 6 at PageID 48.)    He alleges that the Guidelines for child pornography are the product of legislation, not "empirical data."    (*Id.*)

The Sixth Circuit rejected the same argument prior to Dempsey's sentencing.    In *United States v. Bistline*, the court held that "Congress's long and repeated involvement in raising the offense levels" for the child pornography Guidelines "makes clear that the grounds of its action were not only empirical, but retributive—that they included not only deterrence, but punishment." 665 F.3d 758, 764 (6th Cir. 2012) (citing U.S. Sentencing Commission, *The History of the Child Pornography Guidelines* (Oct. 2009)).    It noted that while Congress can act on empirical grounds, it need not do so.    *Id.*

Counsel's decision not to raise the futile argument was therefore not deficient performance.    His failure to do so also was not prejudicial, as the Court would have rejected it pursuant to *Bistline*.    *See Gilley v. United States*, Nos. 1:12-CV-366-HSM, 1:09-CR-45-HSM-WBC, 2016 WL 9344001, at *11 (E.D. Tenn. Jan. 28, 2016) ("Because [petitioner's] proposed attempt to obtain a lower sentence based solely on" the non-empirical

---

[5] During his ex post facto oral argument, counsel suggested in the alternative that the Court consider the relative remoteness in time of Defendant's production of the pornography as a factor to vary downward from the advisory sentencing range.  (No. 13-cr-10047, D.E. 33 at PageID 109.)  The Court ultimately imposed a sentence below the advisory range.

underpinnings of "section 2G2.2 would have failed as a matter of law" under Sixth Circuit precedent, he "cannot establish that the absence of such argument resulted in prejudice.").

Claim 4 is DENIED.

**7. Claim 5: Relevant Conduct**

Petitioner asserts that counsel was ineffective by failing to argue that the government had not established that he intended to produce child pornography in 2001. (D.E. 11 at PageID 112; D.E. 6 at PageID 56; D.E. 1 at PageID 9.) The claim is without merit.

As noted, the cross-reference for production of child pornography, § 2G2.2(c), provides for application of a higher base offense level where the offense "involved causing, transporting, permitting, or offering . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. § 2G2.2(c). Dempsey alleges "that he did not intend to take pornographic images; rather, his purpose and intent in taking the photos of [Child 1] was to produce "'art-style' nudes." (D.E. 6 at PageID 56.)

Counsel did not perform deficiently by failing to raise this issue. As discussed, the images Petitioner produced in 2001 included the photo of a nude child kissing Dempsey on the mouth while straddled across his naked lap. Even if counsel could have developed a straight-faced argument that Dempsey was a misunderstood artist, the inmate has not overcome the presumption that counsel's decision not to press that argument was sound strategy.

Petitioner also has not shown that there was a reasonable probability that the argument would have been successful and resulted in a lesser sentence. He has thus failed to establish that he was prejudiced.

Claim 5 is DENIED.

### 8.  Claim 6: Reduction in Offense Level for Minor or Minimal Participation

Petitioner claims that his attorney should have argued for an offense level reduction under U.S.S.G. § 3B1.2.  (D.E. 6 at PageID 60; D.E. 1 at PageID 10.)   The claim is without merit.

Section 3B1.2 calls for a four-level reduction of the offense level "[i]f the defendant was a minimal participant in any criminal activity," and a two-level reduction "[i]f the defendant was a minor participant."  U.S.S.G. § 3B1.2.  A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group," and a minor participant is one who is "less culpable than most other participants, but whose role could not be described as minimal." *Id.*, cmt. nn.4-5.  The application notes to § 3B1.2 state that "[t]his guideline is not applicable unless more than one participant was involved in the offense."  *Id.*, cmt. n.2.

Dempsey is not entitled to a reduction under § 3B1.2.  There is no dispute that he was the sole participant in his crimes of possession and transportation of child pornography, as well as the only person involved in the relevant conduct of production of child pornography.  He nevertheless argues that *United States v. Groenendal*, 557 F.3d 419, 427 (6th Cir. 2009), allows for a reduction under § 3B1.2 if the defendant "is less culpable than others involved in relevant conduct," which he insists he is.  (D.E. 6 at PageID 60.)  His reliance on *Groenendal* is misplaced.

In that case, the defendant was convicted of trafficking in child pornography through the exchange of pornography over the Internet.  *Groenendal*, 557 F.3d at 424.  No other individuals were charged.  *Id.* at 427.  The Sixth Circuit held that the district court erred by not considering the application of § 3B1.2 since trafficking "necessarily involves more than one person."  *Id.* Here, none of Petitioner's conduct necessarily involved more than one person and, in fact, did not

involve others.   How his conduct compares to that of others in unrelated cases is irrelevant.   *See generally United States v. Hernandez*, No. 17-5448, 2018 WL 443764, at *3 (6th Cir. Jan. 17, 2018) ("The relevant inquiry is . . . whether [the defendant's] conduct was substantially less culpable than the conduct of the average participant in the *instant* criminal enterprise.") (emphasis added) (citing *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002)); *see also United States v. McElheney*, 630 F. Supp. 2d 886, 897 (E.D. Tenn. 2009) (holding that, "[w]hile [the] [d]efendant [was] certainly less culpable than the average mass producer of child pornography," § 3B1.2 did not apply because there were no other participants in the offenses of conviction or relevant conduct).

Because Petitioner has failed to demonstrate that he is entitled to a reduction in his offense level under § 3B1.2, his claim that counsel was ineffective for failing to advocate for application of that provision is without merit.   *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Claim 6 is DENIED.

**9.   Claim 7: Sentencing Disparities**

Dempsey argues that "[d]efense counsel was ineffective for failing to argue adequately prior to and at sentencing that 18 [U.S.C.] § 3553(a)(6) directs the courts to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar crimes."   (D.E. 6 at PageID 63.)

Counsel did argue unwarranted disparities in his position statement, (No. 13-cr-10047, D.E. 23 at PageID 57), and Petitioner has not shown that he was prejudiced by counsel's failure to do more.   The Court considered all arguments advanced by the parties, (*id.*, D.E. 33 at PageID

134), and sentenced Defendant to 170 months' incarceration—well below his advisory Guideline range of 210-262 months.

Claim 7 is DENIED.

## 10. Claim 8: Psychological Expert

Petitioner asserts in Claim 8 that "[c]ounsel was ineffective for failing to contact" a psychologist named Dr. Garrison. (D.E. 6 at PageID 71.) He alleges he told counsel that he had "established a rapport" with Dr. Garrison and had "made good progress in identifying psychological issues that had contributed to [his] behavior," (D.E. 1 at PageID 13). He insists that Dr. Garrison would have testified at sentencing that Petitioner made progress in the twelve years since he produced the child pornography, was at low-risk to reoffend, and was not a danger to the community. (D.E. 6 PageID 70.)

In response, counsel attests that that he "had no reason to contact Dr. Garrison nor any reason to call him as a witness at Mr. Dempsey's sentencing because he simply had no useful information to provide." (D.E. 10-1 at PageID 103.) He explains:

> Prior to meeting with Mr. Dempsey, I reviewed his Pretrial Services Report. The Report contained information from Perry County court records. According to the Report, these records showed that Mr. Dempsey was ordered to a Forensic Evaluation with Centerstone (Maury County MHC) on April 9, 2013 to evaluate "competency to stand trial, mental condition at the time of the crime, and diminished capacity." The records indicated that on June 21, 2013, Dr. Jon Garrison, Psy.D., determined that Mr. Dempsey was competent to stand trial and did not suffer from a diminished capacity at the time of the offense. . . . Dr. Garrison also opined that "further outpatient evaluation was needed and an appointment was scheduled for July 19, 2013." However, Mr. Dempsey was in federal custody at that time, having been detained by Magistrate Judge Bryant on July 2, 2013. . . . Thus, Mr. Dempsey never attended the follow-up evaluation nor received any therapy from Dr. Garrison.
>
> . . . Mr. Dempsey orally confirmed this same information to me in our meeting on July 19, 2013.

(*Id.*)

In reply, Petitioner argues that "[t]here is no way, short of clairvoyance, that [counsel] could swear to this Court that Dr. Garrison could offer no expert testimony which would be helpful to Mr. Dempsey" because "[c]ounsel never spoke to Dr. Garrison." (D.E. 11 at PageID 116 (emphasis in original).)

Defense counsel's "failure to reasonably investigate . . . and present mitigating evidence . . . at sentencing can constitute ineffective assistance of counsel." *Miller v. Mays*, 879 F.3d 691, 703 (6th Cir. 2018) (quoting *Goodwin v. Johnson*, 632 F.3d 301, 318 (6th Cir. 2011)). "Choices 'made after less than a complete investigation are reasonable precisely to the extent that a reasonable professional judgment supported the limitations on the investigation.'" *Id.* (quoting *Goodwin*, 632 F.3d at 318-19). "Such choices include whether to present expert testimony . . . ." *Id.* (citing *Jackson v. Bradshaw*, 681 F.3d 753, 771 (6th Cir. 2012)).

Dempsey has not shown that counsel's performance was deficient. Even without speaking with Dr. Garrison, counsel did not unreasonably conclude that the psychologist had nothing helpful to offer. Dr. Garrison had been retained in the inmate's state case to evaluate his competence to stand trial, as well as his mental condition and diminished capacity at the time of the state offense. He was not retained for the purpose of evaluating Defendant's likelihood of reoffending or progress toward that goal. In addition, counsel was aware that Petitioner had not been in therapy with Dr. Garrison following his evaluation, as his federal detention precluded him from having a follow-up appointment. Petitioner does not contest these facts. Accordingly, the Court finds that counsel's investigation was adequate and that his decision not to call Dr. Garrison at sentencing was based on sound strategy.

Dempsey has also failed to show that he was prejudiced by counsel's decision not to call Dr. Garrison. In the absence of an affidavit from the psychologist setting forth the specific testimony he would have given, it is pure speculation that the Court would have imposed a shorter sentence. *See Brooks v. United States*, No. 17-5705, D.E. 9-1 at 6 (6th Cir. Jan. 22, 2018) (citing *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (holding that petitioner did not establish prejudice "from [counsel's] failure to introduce" at sentencing the testimony of certain witnesses where he did not produce "affidavits or any other evidence establishing what [the witnesses] would have said")).

Claim 8 is DENIED.

**11. Claim 9: Probation Meeting, PSR Factual Errors, and Child Impact Statement**

In Claim 9, Petitioner claims that his attorney was ineffective in three ways: Counsel failed to attend the meeting with the probation office to review the PSR, did not object to the PSR's recitation of Child 2's statements to the police regarding Dempsey's abuse, and did not object to her impact statement at the sentencing hearing. (D.E. 6 at PageID 73; D.E. 1 at PageID 14.) He alleges that he intended to read a prepared statement at sentencing disputing some of the facts in the PSR, but counsel advised against it and urged him to simply say he was sorry. (D.E. 6 at PageID 73.)

The Court finds that counsel was not ineffective by not attending the meeting with the probation office. Attorney Alden arranged for Assistant Federal Defender Dianne Smothers to represent Defendant at the meeting. (D.E. 10-1 at PageID 102.) Petitioner does not explain why the substitution reflects deficient performance by his attorney, nor does he indicate how he was prejudiced by Ms. Smothers's representation.

Dempsey also has not shown that counsel performed deficiently by failing to object to the PSR's factual recitations of his sexual abuse of Child 2, (PSR at 6), and Child 2's recounting of the same in her victim impact statement, (No. 13-cr-10047, D.E. 33 at PageID 100-03). In determining a proper sentence, a court must consider, among other factors, the "history and characteristics" of the defendant, 18 U.S.C. § 3553(a)(1), which may include a description of the defendant's prior sexual abuse of children. *See United States v. Bartlett*, 416 F. App'x 508, 511 (6th Cir. 2011) (in bank robbery case, holding that PSR's recitation of defendant's sexual abuse of daughter was proper because, "[w]hether or not they are true . . . allegations of sexual abuse are part of [the defendant's] 'history and characteristics'" under 18 U.S.C. § 3553(a)(1)).

The record also belies Petitioner's assertion that he was prejudiced by counsel's failure to object to Child 2's allegations of sexual abuse, since he himself acknowledged the seriousness of the circumstances and his background. After Child 2 presented her statement, Defendant addressed her directly saying "how sorry I am" and "I'm just crushed. I know that I have hurt her and myself." (D.E. 33 at PageID 122, 124.) Later, when the Court addressed "the history and characteristics of the defendant," as provided in part by Child 2, Dempsey agreed with the Court's assessment that the "abusive," "heinous," and "unspeakable" acts "that [he] ha[d] perpetrated" were the reason that he was "sitting [there] where [he] [was]," but that he "brought that upon [him]self." (*Id.* at PageID 131-32.)

For these reasons, Claim 9 is DENIED.

### 12. Claim 10: Waiver

Petitioner asserts that his "waiver to claim ineffective assistance of counsel was . . . involuntarily and unintelligently made" because "he was misled" by counsel "and misunderstood

the scope of his waiver of" his § 2255 rights. (D.E. 6 at PageID 74.) The Court has already determined that Petitioner's waiver was knowing and voluntary.

Claim 10 is therefore DENIED.

For all of these reasons the Petition is DENIED in its entirety.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App.

P. 24(a).   However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.   *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.   Leave to appeal *in forma pauperis* is therefore DENIED.[6]

IT IS SO ORDERED this 7th day of March 2018.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.